Good morning, Your Honors. May it please the Court, I'm Casey Nye on behalf of the Appellant, Cheryl Lee Craig. This appeal is about the Bankruptcy Court's misapplication of its authority to partially discharge student loan debt and adversary proceedings brought under Section 523A8 of the Bankruptcy Code. That authority provides the bankruptcy judge with the ability to partially discharge student loans under Section 105A of the Code and this Court's decision in Inouye-Saxman. The Courts below misapplied this authority in at least two ways. First, the partial discharge remedy imposed in this case is outside the authority granted under Section 523. It's not a kind of relief available under that section of the Code. Second, the Court has to do with how. How? Very simply, Your Honor, 523 has two kinds of relief. The one goes one direction, one goes the other direction. It subjects something to discharge, a debt that's dischargeable, which means it's subject to the injunction under Section 524 of the Code, which bars the creditor holding such debt from garnishing wages. You're going off on all kinds of tangents. Well, okay. The non-dischargeability statute has two possibilities, a debt that's dischargeable or non-dischargeable. If a debt is dischargeable, so that's the relief available. What the judge imposed in this case was a payment obligation that goes from the date of the judgment forward without an end date. When you first stood up, I thought you said you couldn't have partial dischargeability, but you can, can't you? Under Saxman, you absolutely can. Right. So you're saying that the, in effect, debt restructuring is not dischargeable, is not a discharge. Is that what you're saying? That's right. The problem with the judgment in this case is there isn't an end date. So without an end date. So there's no discharge, there's just a continuing debt. Yes, that's right. There's a restructuring of the payment obligation. But the overall amount of the debt and the interest accruing on the debt are unchanged. And because the payments are less than the monthly interest that accrues, the debt actually goes up as she complies with the judgment. And this is where the effect of discharge under 524 is key. Because under 524, if something is discharged, then the creditor is enjoined from enforcing the debt when she defaults. How does a partial discharge work, then? Well, simple. And we would – it's okay to back – there's some equitable attractiveness to having a payment obligation. And you can back into the amount that's discharged using payment. But the problem with this judgment in particular is that there's no end date. Okay. You can have a partial discharge, which means the debt is still there in some respect. It's partially discharged. You're paying a lesser debt. And it seems to me, just sitting here, that the end date is the end of the debt. But, yes, that's right. Right? So isn't that the end? In this case, with the interest imposed, the debt goes up. You're saying, arithmetically, it won't – it'll never end. It'll never end. But – And what I'm saying is what the judge needed to do in this case was impose a term on it. Whatever term that the judge believed was reasonable under the circumstances. What case or what section says you've got to impose a term on a partial discharge? There isn't a – well, a couple of points. Because there was no term, there's no part of the debt. The question the court should ask is, what part of this $80,000 of student loan debt is the ECMC enjoined from enforcing? Well, they couldn't enforce anything over the monthly payments. So, in other words, she was required to pay $68 and then plus the $150 later. And the portion of the debt that was otherwise owing under the note, the creditor could not enforce. He was limited to the amount that the bankruptcy court had specified. Ever. Okay. I understand – I understand that in a way. But the only protection that a discharge creates is it bars a creditor from later suing on a default and later garnishing wages or, in this case, they can garnish Social Security for student loans. Okay. So let's try to figure it out as a practical matter. She's going along on these payments. Right. Which is really a restructuring. Would you think that's a characterization of what the judge did? Yes. Okay. So the judge has a restructuring and you're going along, you're going along. And then, boom, she can't pay and she gets sick or whatever. Right. She defaults on the payment structure. Then could the creditor come in and, in effect, demand a balloon payment or demand everything? That's as much as I can understand from the judgment, yes. Well, let me just ask, because restructuring has some public policy advantages as opposed to complete, you know, write-off of debts, and it also tries to put a debtor in a more even keel with their finances, I think what we need to understand is where is the intersection between a revision of a debt or a payment schedule and a true discharge where some portion, however you define it, is off the table forever? Well, a good comparison would be Chapter 13 of the Code. In Chapter 13 and in Chapter 11, the court can rewrite certain kinds of obligations, in effect, and require the payment over five years, up to five years under Chapter 13. And when the five years is done being paid under Chapter 13, the remainders of the debt is discharged. The debtor completes their plan. Whatever's left is discharged. In this case, the problem with this judgment is that it goes on forever, and there's no point at which that's discharged. The other point that I would make is that Chapter 13 is a place where Congress said, yes, you can restructure debts. 523 is not that place. Okay, so that made me wonder, if you meet these criteria where you're subject or eligible for discharge, is the discharge mandatory or is that still discretionary? If you meet the undue hardship element under the Brunner test, it says shall discharge. A student will impose an undue hardship. Okay, so then the shall discharge doesn't preclude a partial discharge, correct? Under Saxman and 105, it does not. And then the question would be, what is, is this a partial discharge or is this just a restructured debt? Yes. Okay. That's exactly right. And if I may turn very briefly to the second major issue with this in our view, is that this wasn't an appropriate case for a partial discharge at all. Because under the first prong of the Brunner test, the court found a, what would constitute a minimal standard of living. On the first prong, is there a present ability to pay and still maintain a minimal standard? Yeah, if you accept the court's facts, there's no way she can pay the $68, for example. Yeah, but how has she been paying it? I mean, a person on the street question. Well, if she can't pay it, how long has she been paying $68? Well, in fact, she's defaulted on the $68. I'm sorry. I couldn't hear that. In fact, she has defaulted on the $68. Maybe you could explain this footnote, which I found somewhat puzzling in the court's order. It's footnote three. And it says, you know, he acknowledges what her income is or what he's found her income to be, $16,815. And her monthly income is some $1,400, leaving, based either on her budget or what the court said was his more realistic budget, a deficit, which he says is $384. And then he has a sentence saying, which I infer means, well, the debtor is somehow making this work. And so if she's making it work on a monthly basis, then when, if we say stop paying your IRA, your 401K, then she'll have the $68. Can you explain what this means or what the court was doing there? Well, what I think the court – well, I can tell you how that was working, is at that time she didn't have a car, which reduced her monthly payment. But the court was – I don't know what the court was saying. They were saying just that I'm inferring that she can make these payments. Well, let me go back to the question that I asked you, to which I didn't get an answer. She'd been paying the $68 a month, correct? She's now defaulted on that. Well, you know, I don't care what she's doing now. I asked you, was she paying $68 a month? To her 401K at the time. Yeah, pretty much paying a debt to herself. How long had she been doing that? For whatever amount of time she'd been employed by that one. I can't find – how long in the record does it show that she – She is in the record. I don't have that. Well, how long had she been paying $68 a month, and what was the total amount that she paid? She had accumulated about $1,600 over a couple of years. So she was able to pay $1,600. I don't understand how she couldn't pay it. Where was it coming from? Does the record show that? It was coming automatically out of her paychecks. Well, but it couldn't. She couldn't live if you accept the arithmetic that the court came up with. She didn't have it. I see that amount of time here. But I'm not out of time. I am asking you questions. The way 401K payments work is that it's pre-tax deducted from your wages and diverted from your gross income. Money you would otherwise get. Right. So she was somehow able to live not getting the $68 that she was entitled to get. Right. How? Where was this money coming from? I mean, did she have giant credit card debts that she was fighting? She did have some credit card debts. Is that in the record? The debtor's schedules are in the record. I was looking for how she was able to pay the $68, and I can't find it adequate in the record. People are guessing. The record is full of guesses, probably. Well, how she was able to do it was it was taken out of her wages before she got her income, and then she lived off of what her income was. But then this budget would be erroneous. Correct. I mean, that's the question, because even without the car, she's still running in the red. So there's no way for her to have been able to pay the $68 and still cover her mortgage. She had children or dependents at some point. She had children at some point. It changes your tax situation and her take-home. But we can't figure out. I mean, the court says, well, she had this, and that was her budget. But now we're looking, and this should be her budget. This is page 6. Right. The court said this should be her budget. And there are a number of parts to that budget that have a little bit of flexibility she can forego. The budget has a $305, I believe, for the amount of her medication costs. She can practically manage her budget by not getting some medication some months. Is that how she did it? The record is not definitive. It's very confusing to me to have a record that doesn't answer this question. I mean, it's the person on the street question. She doesn't have the money. Well, how has she been doing it? Not having a car takes, I believe, $250 out of the court's budget. That gets her a lot closer. And then the court said, but if she got a car, then she would be way under. Yes. Okay. The record's just not clear there. Thank you. Thank you. May it please the Court. Counsel, my name is A.L. Brown, and I represent the Educational Credit Management Corporation, the appellee, in this matter. Your Honors, the matter before the Court, we believe, truly champions form over substance. It is clear that Ms. Craig's debt amortized under the FELP program, which is the student loan program she was engaged in, amounted to a monthly payment of $410 per month. The bankruptcy court, initially giving Ms. Craig relief under 523A8, operating under 105 under this court's Saxman decision, immediately gave her relief of $333 per month that the creditor was barred from collecting. At no point during this time period in which Ms. Craig was ordered to pay the $68, could ECMC seek more than $68. That is the function of the discharge injunction. Is that, if I take your numbers, if it was 410 a month and she's discharged from 333, does that mean the company is forever foreclosed, or does that go back on the other end in an amortization? Your Honor, I think this, that question really kind of leads to what the nature of a bankruptcy discharge injunction is. A bankruptcy discharge injunction is a prohibition against a creditor from collecting. It doesn't actually do anything to the debt. So how ECMC or the creditor handled it in its accounting system really had no bearing on. But from collecting what? Collecting anything over the amount that had not been discharged. At that period, it was $68. The amount grew to $218 once the bankruptcy court also found that the funds would be available from the completion of the payment on her mortgage. So, I mean, this is a little bit morbid, but going way forward and at the time of her death, do you then have a claim against her escape for the full amount of the debt plus interest as accrued under the note? No, Your Honor. Under the federal regulations, when a student loan debtor dies, their debt dies with them. Okay. So in effect, you were getting $68 and then whatever was $150 plus $68 over her lifetime, and so the present value of that is the amount of your collectible loan, I guess. Your Honor, you could reduce it down to present value, but I think the more conservative and probably safe approach in an effort to avoid violating the discharge injunction would be to simply collect the amount that the court permitted. Now, should she default on that amount? Right. That was my next question. What happens? Should she default on that amount, Your Honor, ECMC would not have the right to go into bankruptcy court. What we would have to do is then go into a state court and add up how many months she's in default and seek a judgment for that. Now, we could do that until the debt is either paid off, which would not happen, given the amount of payments that she's been asked to pay, or until the end of her lifespan. But that is relief, and I think that that should be made clear to the court. The bankruptcy court did what all bankruptcy courts do operating under Saxman. Instead, he started with the payment. What a bankruptcy court does when they're looking at the Saxman decision and they're granting a partial discharge is they're lopping off a lump sum and re-amortizing it to arrive at the payment. This bankruptcy court started in reverse. There was no prohibition under Saxman or under 105 that would not permit the bankruptcy court to do that. So in other words, by starting in reverse, it would mean like if she lived to be 225 or some number, maybe it would be paid off? Yes, Your Honor. And I think that goes in part. But the reality is she won't live to be 225. So if things clicked along, she would owe the 68-plus for the rest of her life. Your Honor, yes, she would owe it. But again, bankruptcy is not about what the debtor owes. It's about what the creditor can collect. Can collect, right. But it is about what she owes because the determination of what you can collect is predicated on what she can pay in this circumstance once she meets the criteria and the judge goes into some kind of partial discharge. I think I understood Your Honor's point, and I'll take an attempt to make sure I did, which is, yes, what the creditor, what the debtor owes is what the bankruptcy court said is nondischargeable. Again, student loans are presumptively nondischargeable. And so I see the judge had a question. Is there a practical difference between doing it the way the discharge, the partial discharge under Saxman, the way you were saying cutting off the lump sum, reamortizing, reaching a payment, and what the court did here? What's the practical differences between doing it in reverse and doing it the normal way? Well, it's more difficult for the creditor, frankly, Your Honor, in that we would then have to wait until she defaulted, until it was worth us going into court. You know, at 218 bucks per month, as a creditor, you look at it significantly differently than you do a $60,000 debt that's been reduced to $20,000 debt and how you would proceed in collections. So in some regards, it's a benefit to, in a practical way, it's a benefit to the debtor because the creditor is less likely to enforce until the debt gets to a certain point where it's the debt. You mean the defaulted amount. And so then what's the practical? It goes, it clicks along at about how much per year? Your Honor, I think the total was initially about $1,600 per year under the $68, and then when he added the $125, that number grew. So let's say it's $200 a month, right? $218 per month, roughly. Right, right. So basically, you go along and after four or five years, you get $10,000 and then you sue and then she doesn't have any more money than she did before. And again, that goes to the nature of what a discharge injunction is, and I think that's often misunderstood. It's not a mandate that she paid. The bankruptcy court does not get into the business of whether debtors actually pay with the exception of the 13 plans, in which counsel refers to as an example as to how this should work. I disagree, Your Honor. This should not work as a Chapter 13 plan discharge because this student loan debt is congressionally accepted from that discharge. But other than the Chapter 13 context, bankruptcy courts don't get into the matter of whether a debtor actually pays non-dischargeable debts. Their job under the code is to find out what debt is dischargeable and non-dischargeable and to issue an injunction against creditors prohibiting them from collecting anything that it has found to be dischargeable. What is non-dischargeable, the creditor is left to whatever remedies they have under state or federal law. Let's assume for a second then that she's paying the $68 a month for a couple of months and then she gets sick and she's not paying anymore because she can't. She goes back to bankruptcy court and seeks a modification? Your Honor, I think that would be barred by res judicata. Well, then she has to go in and start a new bankruptcy. Yes, Your Honor. And that is her right to do so. Which if you sued for $10,000 or $20,000, which under these circumstances she wouldn't have, she would then just have another big, large dischargeable debt. Yes, Your Honor. Well, it would still be a non-dischargeable debt. I said dischargeable, I meant non-dischargeable. Yes, Your Honor. And you would have a judgment if you went to state court? Well, we, and again, these are all the problems that guarantors and lenders deal with as it relates to student loan lenders as to whether or not you want a judgment and how that affects your collection approach. But she would, Your Honor, be entitled to file another AP and seek to have the subsequent debt Excuse me, file another AP? Well, Your Honor. What's an AP? I'm sorry, Your Honor. It's an adversary proceeding under the bankruptcy code. I'm familiar with adversary proceedings, but I just haven't heard anybody call them APs. My apology, Your Honor. I thought it was an advanced placement. I want to address the question that the court had, which is the man on the street question. How is she paying the $68? And I think the judge's indication to footnote three is critical to that question. What the bankruptcy court did was take a look at her overall reasonable expenses and said, this is reasonable. And there is some dispute as to whether the bankruptcy court should look at each expenditure and say this is reasonable. But how can it be reasonable if we start from the proposition that she doesn't have, if you take the bankruptcy court's findings of fact on her income and expenses, she's still underwater and doesn't have the $68 to pay. Well, Your Honor, that's only if you accept the large car expenditure that, at the time, was not something that Ms. Craig actually had. Again, the court should note what the bankruptcy court said. It said she would be, if she gets a vehicle, she would be $334 underwater. She did not have a vehicle. And so what the bankruptcy court was doing was trying to understand the universe of Ms. Craig's needs under the minimal standard. And he concluded that, yes, these are her minimals, these are her needs, but I conclude that she's making it work. And that included, Your Honor, this amount, and I see my time is running out. That included, Your Honor, the amount for this vehicle that she did not have, a contingency fund that she did not ask for that the bankruptcy court included. And so the bankruptcy court has inflated it to give her the best view possible, granted her the finding of undue hardship, but found as a matter of equity. And, again, I think that's important under 105. This is a matter of equity in which the appellant would have to prove abusive discretion in order to overturn the bankruptcy court's finding that she could make the payment. Let me just read you something from the district court's opinion. Craig points out that the bankruptcy court found her budget was $384 greater than her monthly income. So even excluding her $68 payment to her 401K and her $150 mortgage, her monthly income would still be $166 less than her realistic budget. And, again, in short, Craig argues that the bankruptcy court cannot, as a matter of mathematical logic, have found that the payments it ultimately ordered would not impose an undue hardship. Craig's argument is not without merit, then the court says. Where does that leave us? Your Honor, if I could, I would again emphasize that that budget that the bankruptcy court is, that the district court is referring to, and, again, this court reviews the bankruptcy court decision de novo, so there should be no deference to that opinion. However, that budget and the facts that it presents, or that opinion and the facts that it presents, is inflated by the $337 car expenditure, is inflated by the $75 cushion for a contingency fund, and by my math calculation, which should not be trusted, and I'm sure the court would not trust it, but would check it out, it would find that that is a $28 per month surplus. All the same, that relates to the undue hardship. She was granted the undue hardship. She received the undue hardship. In order to find that this bankruptcy court should be reversed, this court would have to say that the bankruptcy court had an obligation to ignore all future resources that the debtor would have under 105. That is not the meaning or the spirit of Saxman 105 or 523A8 we ask this court to affirm. Thank you. I think your time has expired. The case just argued is submitted.
judges: Trott, McKeown, Ikuta